J-E03003-20

2021 PA Super 80

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLBY DAVID ORNER | : | No. 351 MDA 2019 |

Appeal from the PCRA Order Entered January 24, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007025-2013

BEFORE:  PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON, J., STABILE, J., NICHOLS, J., McLAUGHLIN, J., and KING, J.

OPINION BY BOWES, J.:                                    **FILED APRIL 27, 2021**

The Commonwealth of Pennsylvania appeals from the January 24, 2019 order that granted the petition for relief filed by Colby David Orner under the Post-Conviction Relief Act ("PCRA"), and awarded him a new trial due to his trial counsel failing to call a beneficial witness at trial.  We affirm.

We glean the following facts from the testimony adduced at Orner's trial. The events giving rise to this case took place in the evening hours of December 31, 2012, in Manchester, Pennsylvania.  The complainant, M.B., was celebrating the New Year with her long-term boyfriend, Brendan Krouse, and their neighbor, Orner.  All three individuals reported drinking heavily that evening in each other's company at the residence shared by M.B. and her boyfriend.  At approximately 9:00 p.m., M.B. reported going to bed while Orner and Krouse left the residence to continue drinking at the Veterans of

Foreign War hall ("VFW"), in nearby Mount Wolf. Ultimately, Orner was unable to enter the VFW and parted company with Krouse.

Thereafter, Orner testified that he eventually returned to the residence. With respect to his actions that evening, Orner asserted that he and M.B. were engaged in a "flirtatious" affair and had been "messing around" for "a little over a year" by that point. N.T. Trial, 10/9/14, at 313, 320-21, 339. Upon reaching the residence, Appellant claimed that he performed oral sex on M.B. for "about two minutes," but stopped when she asked him to and left the residence.[1] *Id*. at 321-22. However, his position at trial was that any sexual contact between the two of them had been consensual.

By contrast, M.B. denied that she and Orner were amorously involved with one another. *See* N.T. Trial, 10/7/14, at 151. At trial, she testified to being awakened shortly after going to bed by the sensation of someone performing oral sex on her. *Id*. at 141-42. Although she initially assumed that Krouse was responsible, she stated that she finally opened her eyes when the same person penetrated her with his penis and discovered that it was Orner. *Id*. at 143-45. M.B. stated that Orner fled the residence as soon as she awoke and asked him what he was doing. *Id*. at 145-46. She testified that she first called her boyfriend, and then sought police assistance by dialing

---

[1] A long-time friend of Orner, Erik Dick, testified that Orner never directly discussed having any sexual contact with M.B., but specifically denied raping her. *See* N.T. Trial, 10/7/14, at 221.

911. Officers responded approximately ten minutes later, and found Krouse already present at the residence with M.B.[2]

Krouse's testimony at trial confirmed that he received a phone call from M.B. alerting him to the assault, but also acknowledged that he flew into an "insane rage" that caused significant damage to the residence. *Id*. at 186, 201-02. He also admitted to sending a text message several months after these events claiming that Orner and M.B. had been engaged in a surreptitious-but-consensual affair for "two years" prior to these events.[3] *Id*. at 188, 199-200.

Orner initially denied any sexual contact had occurred between M.B. and him on the night in question during numerous interactions with police. However, when confronted with a search warrant for a DNA test to compare against a rape kit, Orner admitted that he had "licked his hand and put it on her vagina more than one time." *See* N.T. Trial, 10/9/14, at 256-57, 267-68, 330. During these interactions, Orner consistently denied raping M.B. The

---

[2]  After obtaining a search warrant, police seized an undisclosed quantity of marijuana from the residence. *See* N.T. Trial, 10/7/14, at 217-18.

[3]  Krouse asserted this message was not a statement of fact, but a ploy intended to elicit confirmation from the third party that Orner and M.B were having an affair. *See* N.T. Trial, 10/7/14, at 188-89. Specifically, Krouse sent this text message to an individual named Scott Edward Stambaugh, who confirmed the content of the message at trial. *See* N.T. Trial, 10/9/14, at 306.

test confirmed the presence of Orner's DNA in a sample taken from M.B.'s rape kit.[4]  *See* N.T. Trial, 10/9/14, at 290.

Ultimately, Orner was arrested and charged with a number of criminal offenses related to these events, including rape.  He entered an initial plea of *nolo contendere*.  However, the trial court later permitted him to withdraw his plea after the discovery of two witnesses, Russell and Evelyn Detter (collectively, "the Detters"), who could corroborate the nature of his relationship with M.B.  The Detters were tenants in an apartment owned by Krouse that was next-door to the residence where these events transpired. In addition to being their next-door neighbors, the Detters also regularly socialized with the parties.  *See* N.T. Trial, 10/9/14, at 366-68.

The Commonwealth's first two attempts to try Orner for these charges abruptly ended in mistrials.[5]  In the midst of the third proceeding, trial counsel announced that he had failed to serve subpoenas upon the Detters.  *See* N.T. Trial, 10/9/14, at 247-48.  Sheriff's deputies eventually detained Mr. Detter and brought him to the courthouse to testify, but could not locate Mrs. Detter. In relevant part, Mr. Detter testified that: (1) "several months" prior to the

_____

[4]  The forensic analysis conducted by the Commonwealth concluded that this positive sample contained "saliva," but no "[s]eminal material." Commonwealth's Serology Report, 5/21/13, at 1.

[5]  Orner's first trial was discontinued after an issue arose that would have required court personnel to testify.  *See* N.T. Trial, 9/2/14, at 75-95.  Orner's second trial similarly ended in a mistrial after M.B. testified in open court that Orner was her marijuana dealer, in contravention of an earlier ruling from the trial court.  *See* N.T. Trial, 9/8/14, at 51-64.

events of December 31, 2012, M.B. publicly expressed a desire to have sex with Orner; and (2) the day after the underlying events in this case, she also confided in Mrs. Detter about her relationship with Orner. *Id*. at 370, 372-73. However, Mr. Detter could not testify as to the precise content of this conversation between M.B. and his wife.

Based upon the testimony detailed at length above, Orner was convicted of rape, involuntary deviate sexual intercourse ("IDSI"), sexual assault, and indecent assault. The trial court sentenced him to an aggregate term of six to fourteen years of imprisonment. Appellant filed a timely direct appeal. However, his counsel sought to withdraw and filed an *Anders*/*Santiago*[6] brief asserting that the available appellate claims were frivolous. Contemporaneously, Orner filed a *pro se* petition seeking to discontinue his direct appeal. Accordingly, this Court affirmed his judgment of sentence. *See Commonwealth v. Orner*, 145 A.3d 797 (Pa.Super. 2016) (unpublished memorandum at 1-8). Thus, Appellant's judgment of sentence became final under the PCRA on April 29, 2016, when he discontinued his direct appeal. *See Commonwealth v. McKeever*, 947 A.2d 782, 785 (Pa.Super. 2008).

On March 30, 2017, Orner filed a timely *pro se* PCRA petition asserting, *inter alia*, that trial counsel was ineffective for failing to call Mrs. Detter to testify at his trial. *See* 42 Pa.C.S. § 9543(a)(2)(ii). The PCRA court appointed counsel to represent him and PCRA counsel filed a supplemental memorandum

---

[6] *See Anders v. California*, 386 U.S. 738 (1967); *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

- 5 -

of law. On August 15, 2018, the PCRA court held a hearing at which trial counsel and Mrs. Detter testified.

Trial counsel testified that his pre-trial investigations indicated that Mrs. Detter would testify that M.B. had intimated that the complained-of sexual encounter with Orner was "consensual," but that she had been "caught in the act" by Krouse. *See* N.T. PCRA Hearing, 8/15/18, at 10. Although he mentioned Mrs. Detter by name in his opening statement, trial counsel failed to subpoena her for Orner's third trial. *Id*. at 12-14. Trial counsel conceded that he spoke with Mr. Detter prior to the third proceeding, but never directly advised Mrs. Detter of the trial date. *Id*. at 15-16. According to trial counsel's testimony, the result of this oversight was the omission of a "key witness" in Orner's defense. *Id*. at 18.

Mrs. Detter testified that M.B. had implied a much different version of events to her than that presented a trial.[7] According to Mrs. Detter's testimony, M.B. and Orner had intended to rendezvous at the residence while Krouse was drinking at the VFW on the evening of December 31, 2012. The two engaged in consensual "sexual contact," but they were interrupted when Krouse unexpectedly returned home in a "rage." Thereafter, Orner fled from the residence. *Id*. at 36-37. Mrs. Detter further related that this affair was an ongoing matter, and asserted that M.B. had given Orner a key to the

---

[7] During her testimony, Mrs. Detter reviewed a written summary of her conversation with M.B. that she created on May 20, 2014. This written statement was entered into evidence at the PCRA hearing and is part of the certified record in this case.

residence and would regularly meet him there while Krouse was not at home. *Id*. at 38-39. Most importantly, Mrs. Detter asserted that M.B. had confessed that her rape allegation against Orner was "false." *Id*. at 46.

At the time of trial, Mrs. Detter testified that she was regularly traveling between Pennsylvania and Atlantic City, New Jersey while tending to her father, who was suffering from Alzheimer's disease. *Id*. at 33-34. However, she also stated that she was willing to testify and would have been available if she had received notice from trial counsel.[8] *Id*. at 33, 40.

By order and opinion filed on January 24, 2019, the PCRA court granted Orner's petition and awarded him a new trial upon the basis that trial counsel was ineffective by failing to call Mrs. Detter to testify at trial. *See* PCRA Court Opinion, 1/24/19, at 1-8. Specifically, the PCRA court concluded that Mrs. Detter's testimony was "crucial" because it would have greatly supported Orner's defense that M.B. "consented to the acts that happened on the night in question and had a motive to fabricate the rape charges." *Id*. at 9.

The Commonwealth filed a timely notice of appeal to this Court. Both the Commonwealth and the trial court complied with the obligations of Pa.R.A.P. 1925. The Commonwealth has raised a single issue for our review: "Did the PCRA [c]ourt err in granting [Orner's] PCRA petition where [Orner] failed to establish that he was prejudiced by his trial counsel's failure to call a

_____

[8] Based upon this testimony, the PCRA court concluded that Mrs. Detter "would have been available to testify if the subpoena had been served on her before trial." PCRA Court Opinion, 1/24/19, at 6.

witness whose testimony would have contradicted most of [Orner's] trial testimony and case strategy?" Commonwealth's brief at 4.

"Our standard of review in a PCRA appeal requires us to determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from error." **Commonwealth v. Small**, 238 A.3d 1267, 1280 (Pa. 2020). "The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court." **Id**. (**citing Commonwealth v. Hanible**, 30 A.3d 426, 438 (Pa. 2011)). "The PCRA court's factual findings and credibility determinations, when supported by the record, are binding upon this Court." **Id**. (citing **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015)). However, we review the PCRA court's legal determinations *de novo*. **Id**.

The Commonwealth's claim in this appeal challenges the PCRA court's conclusion that trial counsel was ineffective for failing to secure Mrs. Detter's testimony at Orner's trial. Accordingly, we will remain mindful of the following legal principles:

> To prevail on a claim that counsel was constitutionally ineffective, the defendant must overcome the presumption that counsel was effective by showing that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1106 (Pa. 2012) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). A failure to meet any of these required prongs bars a petitioner from obtaining relief. *Id*. We also note that this case concerns trial counsel's failure to call a witness:

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the *Strickland* test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial. To demonstrate *Strickland* prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson*, 951 A.2d 1110, 1134 (Pa. 2008).

*Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012). In order for Appellant to prevail "he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Orlando*, 156 A.3d 1274, 1280-81 (Pa.Super. 2017).

The Commonwealth's arguments in this case focus upon the prejudice prongs of the ineffectiveness framework discussed above.[9] Overall, the

---

[9] The Commonwealth has not presented any arguments concerning the arguable merit or reasonable basis prongs of the basic ineffectiveness standard, and we perceive no legal error or factual deficiency in the PCRA court's apt conclusion that Orner's claim for relief satisfied the first two requirements of the *Strickland* test.

Commonwealth asserts that the PCRA erred in finding prejudice and identifies a number of alleged inconsistencies between Mrs. Detter's testimony[10] and the respective testimonies of Orner and the other trial witnesses. **See** Commonwealth's brief at 24 ("The absence of Mrs. Detter's testimony did not prejudice Orner because her testimony and written statement differed from

---

In pertinent part, the PCRA court found that Orner's ineffectiveness claim had arguable merit based upon trial counsel's testimony that Mrs. Detter was a critical part of Orner's defense strategy and her concomitant testimony that she "would have been available to testify if the subpoena had been served on her before trial." PCRA Court Opinion, 1/24/19, at 6-7; **see also** N.T. PCRA Hearing, 8/15/18, at 12-18, 33-40. Along very similar lines, the PCRA also concluded that trial counsel's failure to call Mrs. Detter was a blatant "oversight" and not part of any reasonable trial strategy. PCRA Court Opinion, 1/24/19, at 7. We agree with these conclusions, which are commensurate with the certified record and supported by existing case law. **See**, **e.g.**, **Commonwealth v. Matias**, 63 A.3d 807, 810 (Pa.Super. 2013) (*en banc*) (concluding that trial counsel's failure to admit testimony contradicting complainant's version of events was ineffectiveness).

The Commonwealth has also correctly recited the more-specific legal standard concerning uncalled witnesses, but its substantive arguments discuss only the alleged absence of prejudice under the final prong of this test. **See** **Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012). With respect to the first four prongs of this test implicating witness availability, the PCRA court concluded that Mrs. Detter was "prepared to cooperate," and would have been available to testify but for trial counsel's oversight in failing to subpoena her. PCRA Court Opinion, 1/24/19, at 6. The certified record supports these findings. **See** N.T. PCRA Hearing, 8/15/18, at 33, 40. Consequently, we are bound by these factual conclusions.

[10] The Commonwealth's arguments concern themselves principally with allegations of inconsistencies contained in the written statement that Mrs. Detter created in anticipation of trial and reviewed while testifying at the PCRA hearing. We will collectively discuss these allegations in the context of the testimony that she provided at the PCRA hearing.

Orner's testimony and contradicted Orner's theory of the case." (cleaned up)).

The specific differences identified by the Commonwealth include that Mrs.

Detter's testimony: (1) placed M.B. at the VFW with Orner and Krouse on the

evening in question, before returning to her home around 9:00 p.m.; (2)

alleged that M.B. and Orner had continued to drink and smoke marijuana after

rendezvousing at the residence; and (3) claimed that Orner was forced to flee

the apartment after Krouse unexpectedly came home.[11]  *Id*. at 31-42.  The

Commonwealth maintains that these details do not appear in the trial

testimony offered by Orner and the other witnesses and asserts these

discrepancies are so "material" with respect to Orner's defense that the

absence of Mrs. Detter's testimony did not prejudice him.  We disagree.

The PCRA court addressed these concerns in its January 24, 2019

opinion, as follows:

> The Commonwealth points out that Mr. Detter's testimony would place M.B. at the VFW with Orner and [Krouse] when there was no evidence submitted that M.B. went to the VFW. Other inconsistencies involve what allegedly happened when Orner went back to M.B.'s house and that Orner ran out of the house because he heard [Krouse] return home. We find these inconsistencies do not discredit Mrs. Detter's testimony in its entirety.
>
> We agree with Orner that Mrs. Detter's testimony was crucial to Orner's trial strategy and defense. Orner was charged

---

[11]  Throughout the Commonwealth's brief, it claims that Mrs. Detter's testimony at the PCRA hearing indicated that Orner had vaginal intercourse with M.B. on the night in question.  Our review of the transcripts reveals no such assertion.  Rather, Mrs. Detter's testimony confirmed only that Orner and M.B. had some manner of "sexual contact" that night, without offering specific details.  *See* N.T. PCRA Hearing, 8/15/18, at 37.

with rape of an unconscious person and other sexually related crimes. Orner's defense at trial was that M.B. consented to the acts and Orner testified at trial that he and M.B. had been in a relationship, M.B. had been seeing [Krouse] at the same time, and M.B. made up the allegation. If called to testify at trial, Mrs. Detter would have testified on the day after the incident, M.B. told her that she had been in an on-going relationship with Orner. We find that this testimony could support Orner's position at trial that M.B. consented to the acts that happened on the night in question and had a motive to fabricate the rape charges.

We agree with Orner that Mrs. Detter's inconsistencies with other testimony regarding her recollection of what she was told happened that night are better for the jury to resolve[.]

PCRA Court Opinion, 1/24/19, at 8-9 (cleaned up). We concur with the PCRA court's assessment, which is fully supported by the certified record.

The Commonwealth's case against Orner depended entirely upon the credibility of M.B., where Orner conceded having sexual contact with her, but asserted that it was part of a consensual, ongoing relationship. As the PCRA court has aptly noted, Mrs. Detter's testimony struck at the heart of the credibility of her allegations.[12] This testimony was unquestionably beneficial to Orner's trial defense, in that it provided significant corroboration of Orner's claims and offered additional details of the evening in question. While the

---

[12] To the extent that the Commonwealth is asserting that Mrs. Detter's testimony was too incredible to be believed, the transcripts of the PCRA hearing support the PCRA court's conclusions that her testimony was credible and believable. **See** PCRA Court Opinion, 1/24/19, at 8 ("We find her testimony at the PCRA hearing credible."). As such, the PCRA court's credibility determination is binding upon this Court. **See Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015) ("The PCRA court's credibility determinations, where supported by the record, are binding on this Court[.]").

Commonwealth's arguments may have identified minor inconsistencies in Mrs. Detter's averments as to ancillary details of the evening in question, these concerns do not undermine the central thesis of her testimony, *i.e.*, that the sexual contact between Orner and M.B. was consensual and that her assault accusation was falsified.

Overall, this case is fairly analogous to this Court's prior holding in **Commonwealth v. Matias**, 63 A.3d 807 (Pa.Super. 2013) (*en banc*). Matias was convicted of various sexual offenses after an accusation made by a friend of his minor daughter. He filed a PCRA petition asserting ineffectiveness based upon trial counsel's failure to call Matias' daughter to rebut the complainant's version of events. The PCRA court granted Matias a new trial and the Commonwealth appealed, arguing that the daughter's testimony was "inconsistent" with the trial testimony and "could have corroborated the testimony of the [complainant], and contradicted that of Matias." **Id**. at 810. This Court affirmed, concluding these variabilities were not determinative on this point where "the Commonwealth's case against Matias rested entirely upon the credibility" of the complainant and the certified record supported the PCRA court's findings. **Id**. at 812.

As in **Matias**, the testimony of Mrs. Detter would have gone to the nucleus of Orner's arguments at trial. Its omission prejudiced Orner by depriving him of crucial support for his proffered defense. As detailed at length above, the certified record and transcripts of testimony fully support

the PCRA court's factual findings and we discern no error in the PCRA court's legal conclusions. As such, we deny the Commonwealth's appeal.

Order affirmed.

President Judge Emeritus Bender, Judge Lazarus, Judge Olson, and Judge Stabile, join this Opinion.

Judge King files a Dissenting Opinion in which President Judge Panella and Judge McLaughlin join.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/27/2021